832 P.2d 186

**In the Matter of a Member of the State Bar of Arizona, Maurice Wesley COBURN, Respondent.**

No. SB–91–0065–D.

Disc. Comm. Nos. 89–0212, 89–1026.

Supreme Court of Arizona.

April 24, 1992.

Kenneth J. Sherk, Phoenix, for respondent.

Charles W. Gurtler, Jr., Terrence S. Leek, State Bar Counsel, Bullhead City, and Harriet L. Turney, Chief Bar Counsel, Phoenix, for State Bar of Ariz.

**JUDGMENT AND ORDER**

Pursuant to the stipulation for withdrawal of appeals filed by Respondent and the State Bar of Arizona, and this Court's order dated April 21, 1992, granting withdrawal and acknowledging that Respondent has determined to accept the one year suspension recommended by the Disciplinary Commission,

IT IS ORDERED, ADJUDGED AND DECREED that MAURICE WESLEY COBURN, a member of the State Bar of Arizona is hereby suspended from the practice of law for a period of one year, effective as of the date of this judgment, for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A.

IT IS FURTHER ORDERED that pursuant to Rule 63(a), Rules of the Supreme Court of Arizona, MAURICE WESLEY COBURN shall notify all of his clients, within ten (10) days from the date hereof, of his inability to continue to represent them and that they should promptly retain new counsel, and shall promptly inform this court of his compliance with this Order as provided by Rule 63(d), Rules of the Supreme Court of Arizona.

IT IS FURTHER ORDERED that pursuant to Rule 52(a)(8) and 53(e)(3), Rules of the Supreme Court of Arizona, the State Bar of Arizona is granted judgment against MAURICE WESLEY COBURN for costs incurred by the State Bar of Arizona

in the amount of $3,607.39, together with interest at the legal rate from the date of this judgment.

**EXHIBIT A**

**DISCIPLINARY COMMISSION REPORT**

**BEFORE THE DISCIPLINARY COMMISSION OF THE SUPERIOR COURT OF ARIZONA**

The captioned matters came on for hearing before the Disciplinary Commission on September 14, 1991. The record on appeal having been considered, the issues having been heard and a decision duly rendered, the Commission report is as follows:

**I. DECISION**

The Commission adopts the recommendation of the Hearing Committee that Respondent be suspended from the practice of law for one year. This recommendation is based on the following Findings of Fact and Conclusions of Law.

**II. FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**A. THE GILMOUR MATTER**

Findings of Fact

The Commission finds with regard to Count One:

1. Respondent undertook to represent the complainant, Barbara Gilmour ("Gilmour"), in October 1986, to handle a personal injury case. Respondent confirmed the representation by a letter of October 7, 1986, to Gilmour which outlined a fee arrangement.

2. Respondent failed to adequately prosecute Gilmour's case and to communicate with Gilmour as is evidenced by the following facts:

a. Respondent allowed the suit filed on Gilmour's behalf in Civil Action No. 25818 to be dismissed for lack of prosecution, resulting in a judgment for costs of $30 being entered against Gilmour, and failed to advise Gilmour that the case had been

dismissed or that judgment had been entered against her.

b. Respondent refiled the case under Civil Action No. 28747, and failed to advise Gilmour of the refiling of the action.

c. Upon Case No. 28747 being placed on the inactive calendar for failure to prosecute, Respondent filed a document entitled Controverting Certificate instead of the required Motion to Set and Certificate of Readiness. The Court subsequently treated the Controverting Certificate as a Motion to Set and Certificate of Readiness thereby averting a second dismissal of the action.

d. In a letter to defendant's counsel, Respondent offered to settle Gilmour's claims against the defendants in the action for the sum of $25,000, which offer was made without the prior knowledge or consent of Gilmour.

e. Respondent filed a notice of lis pendens in Civil Action No. 25818 on December 10, 1986, and caused it to be recorded in the office of the County Recorder of Mohave County with full knowledge that the pending proceeding had no bearing whatsoever on the title of any of the property listed in the notice of lis pendens and knowing that the complaint against the defendant owner of the property had little or no merit. At the time of the hearing before the Hearing Committee the lis pendens had not been withdrawn, although the Complaint under which it had been filed was dismissed and title companies seemed to be disregarding the lis pendens.

f. From the inception of his representation of Gilmour there were problems with communication between Respondent and Gilmour to which Gilmour's moving from location to location and other personal problems may have contributed. It is undisputed, however, that Respondent failed to communicate with Gilmour about the settlement offer and the dismissal and refiling of the lawsuit.

3. Respondent failed to maintain his files and records in his representation of Gilmour in a competent and adequate manner as was evidenced by the condition of those files in his appearance before the Hearing Committee.

### Conclusions of Law

The Commission concludes:

1. Respondent failed to diligently and competently pursue Gilmour's legal matters.

2. Respondent failed to communicate with Gilmour about and disclose the dismissal of the original Complaint and the filing of the second lawsuit. He also failed to communicate with Gilmour with regard to the settlement offer prior to tendering it to opposing counsel.

3. Respondent improperly filed a lis pendens where the Complaint did not involve title to the property and the property was owned by a defendant against which the Complaint had little merit.

### Discussion of Conclusions

The alleged violations of the Arizona Rules of Professional Conduct in Count One, particularly ER's 1.1, 1.3 and 1.4 were established by clear and convincing evidence. No violations of ER's 1.5(c), 3.2 or 3.3 were established. The conclusions of the Commission on this count were unanimous.[1]

### B. THE MEAR MATTER
#### Findings of Fact

The Commission finds with regard to Count Three:

1. There was not clear and convincing evidence of misconduct by Respondent with regard to his representation of Mr. and Mrs. Mear (the "Mears") in Count Three of the Complaint:

a. The original Complaint arose from a statement made by the Mears in a child support arrearages hearing which proved to be unrelated to Respondent's representation or conduct of the Mears.

---

**1.** Commissioners Suciu and Andrews did not participate in these proceedings. David Dodge participated in the proceedings as an ad hoc member.

b. The remaining allegations relating to the Mear matter had to do with adequacy of representation. The evidence presented at the hearing was insufficient to support allegations that Respondent had provided poor advice and representation to the Mears. The Committee apparently believed that Respondent should have found some legal way for the Mears to reinstate their lease and continue in the restaurant business when the Mears had been locked out of the premises because they were in arrearages in rent payments, were in arrearages in payments on their equipment, owed medical bills and were concerned that the medical providers would discontinue care to Mrs. Mear during her difficult pregnancy with twins. After discussing the situation and the alternatives, the Mears decided to file a Chapter 7 bankruptcy. It cannot be clearly determined from the state of the record whether this course of action, rather than some other course of action or a Chapter 11 proceeding, was due to Respondent's poor representation and was a violation of the ethical rules.

c. The Mears subsequently reaffirmed medical debts, but there was evidence that some of those debts were incurred during and after the bankruptcy with regard to the birth of the twins.

2. The evidence with regard to the criminal action against the Mears for tendering an insufficient funds check was not clear. It was not clear whether the Mears wrote a check for the lease for which they had no funds at the time or whether it was good when written, but was deposited months later by the landlord and was then insufficient. Mr. Mear's testimony about why he was locked out was not credible and seems to be related to this issue. The issue of whether the debt was discharged in bankruptcy (or was not dischargeable) as a criminal complaint for tendering an insufficient funds check was not clearly established.

3. The Mears did not file the charge against Respondent, the Mears' recollection was vague and the sufficiency of the evidence was not adequate to find violations in this matter.

There was insufficient evidence to find a violation of the ethical rules by Respondent on Count Three.

### Discussion of Conclusions

The Commission unanimously rejected the findings of fact and conclusions of law in Count Three.

## C. COOPERATION WITH THE STATE BAR'S INVESTIGATION OF THE GILMOUR AND MEAR MATTERS

The Commission finds with regard to Counts Two and Four:

1. On or about October 26, 1989, the State Bar requested additional information from Respondent regarding his representation of Gilmour. He was given fifteen days to respond. Respondent failed to timely respond, and a second letter was sent by the State Bar on November 30, 1989, giving Respondent an additional ten days within which to respond. Respondent did not respond within the ten days, although a response was subsequently received on December 18, 1989. At no time did Respondent request an extension of time within which to respond.

2. With regard to the Mear matter:

a. By letter of March 9, 1989, Respondent was advised that a Complaint had been filed against him through the State Bar of Arizona by Harriet L. Turney, Chief Bar Counsel, regarding his representation of the Mears. In that letter, Respondent was requested to provide the State Bar with a response to allegations regarding his conduct. He was referred to Rule 51 of the Supreme Court rules regarding failure to cooperate with disciplinary investigations and specifically to Rules 54(f) and (g) and Rule 61 regarding the status of complainant and confidentiality in disciplinary matters.

b. Respondent filed a one page letter dated April 7, 1989, in response to the State Bar notice of March 9, 1989. The response contained two short paragraphs regarding his representation of the Mears, and no additional documentation was submitted.

c. By letter of May 9, 1989, Staff Bar Counsel requested that Respondent describe in detail his representation of the Mears in the bankruptcy and made specific requests for information. Respondent was given fifteen days from the date of the letter to answer.

d. By letter of May 22, 1989, Respondent answered Staff Bar Counsel's letter of May 9, 1989, declining to provide details of his representation without a written release from the Mears.

e. By letter dated May 30, 1989, Staff Bar Counsel advised Respondent that under the provisions of ER 1.6(d), he was allowed to reveal information which might be confidential in order to defend himself in a disciplinary proceeding, and that a written release from the Mears was unnecessary. Respondent was requested to provide the information previously requested within ten days of that letter. Respondent failed to make any further response to the State Bar on this matter prior to the filing of the Complaint on August 6, 1990, and introduced documents at the hearing not previously provided to the State Bar before or after Respondent located and spoke to Mr. Mear.

3. All of the requests for information in the Gilmour and Mear matters came during the probationary period imposed by the Supreme Court.

### Conclusions of Law

The Commission concludes that Respondent failed to respond in a timely manner to requests for information from the State Bar of Arizona.

### Discussion of Conclusions

The record as presented evidences a careless disregard by Respondent for the Supreme Court Rules regarding discipline and investigations by the State Bar into allegations of misconduct or impropriety of lawyers. Respondent offered no reason or excuse whatsoever for his failure to respond to Staff Bar Counsel's requests for information, other than in the Mear matter

that he disagreed with the position of Staff Bar Counsel that he could release the information without the consent of the Mears. This reason was advanced notwithstanding Staff Bar Counsel's letter of May 30, 1989, which Respondent admitted receiving. Respondent violated Arizona Supreme Court Rule 51(h) and Arizona Rules of Professional Conduct, particularly ER 8.1(b).

The Commission is concerned that in the Gilmour matter, Respondent responded to the Bar's second request only one day late, and not in an untimely manner if five mailing days were added to the ten day response time. Although he did not respond to the first request, the Commission discussed that by the State Bar sending respondents reminder letters or second or even third requests, there is perhaps no "failure to respond" in the ethical sense until the time has passed on all such requests. In this case, however, Respondent was currently on probation and had three disciplinary sanctions imposed. The Commission, with one exception, decided that, in light of the previous discipline and probation, there was a violation of Rule 51(h) and ER 8.1(b). Commissioner Crum, dissented, finding no late response, no failure to cooperate with the State Bar and no violation.

The Commission was unanimous in finding a violation of Rule 51(h) and ER 8.1(b) in Count IV, the Mear matter.

## D. VIOLATION OF PROBATION
### Findings of Fact

The Commission finds with regard to Count Five:

1. On February 3, 1989, a Judgment of Censure and Order Imposing Probation was entered in the Arizona Supreme Court against Respondent. Under the terms of that order of probation, Respondent was required to perform three acts during the course of the one year probation from February 3, 1989:

a. Pay to the State Bar costs in the sum of $1,421.52;

b. Prepare and submit to Chief Bar Counsel a paper or article suitable for pub-

lication in the *Arizona Attorney* regarding potential conflicts of interest in multi-client representations; and

c. Establish within his practice a check system designed to identify potential conflicts of interest between clients and potential clients and submit the system for review, approval and verification of the Chief Bar Counsel.

2. In February 1989 Respondent acknowledged receipt of the Supreme Court's Order and informed the State Bar that he had filed a personal bankruptcy action and might have some difficulty in paying the costs. No further communication occurred between the State Bar and Respondent during the year long probation with regard to the terms of probation. After the probationary period expired, Respondent paid to the State Bar the costs in the sum of $1,421.52.

3. Respondent failed to complete the two other requirements during the one year probationary period or thereafter.

### Conclusions of Law

The Commission concludes that Respondent has been previously sanctioned for violations of the Arizona Rules of Professional Conduct, and that Respondent has failed and/or refused to comply with the terms of his probation.

### Discussion of Conclusions

On February 3, 1989, Respondent was censured for conduct in violation of his duties and obligations as a lawyer. He was placed on one year probation with certain conditions to be met during that probation. He failed to meet any of the terms of probation. During the same period of probation Respondent committed acts which brought about the filing of Counts Two and Four of the Complaint. Respondent has shown disregard for the disciplinary system by establishing a pattern of violating and failing and refusing to comply with orders of the Supreme Court.

Six members of the Commission found a failure to comply with the sanctions and terms of his probation pursuant to Rules 52(a)(6) and 52(a)(8), with Commissioner Crum dissenting because the State Bar deviated from the express order of the Supreme Court in not referring the violation of probation to Hearing Committee 1A as set forth in the order of the Supreme Court, in failing to monitor and take affirmative action to see that Respondent complied with the terms of probation and in failing to respond to Respondent's inquiry regarding payment of costs because of his bankruptcy. The entire Commission would have been less troubled by the late payment of costs in view of Respondent's letter to the State Bar if he had complied with the other terms of probation.

### E. PRIOR DISCIPLINE

#### Findings of Fact

The Commission finds with regard to Count Six:

1. Respondent received an Informal Reprimand on June 2, 1986, from the Disciplinary Commission of the Supreme Court of Arizona for violation of disciplinary rules which provide that a lawyer shall not engage in conduct that is prejudicial to the administration of justice, and that a lawyer shall not intentionally fail to seek the lawful objectives of his clients through reasonably available means permitted by law and the disciplinary rules.

2. Respondent received an Order of Informal Reprimand on September 29, 1987, because he lost documents that his client had entrusted to him, thereby failing to safeguard his client's property.

3. Respondent received a Judgment of Censure and Order Imposing Probation on February 3, 1989, for conduct unworthy of and in violation of his duties and obligation as a lawyer, more specifically (a) by placing funds belonging to his client into his general office banking account, thereby failing to preserve the identity of his clients' property, and (b) representing clients with conflicting interests without the informed consent of said clients.

## Conclusions of Law

The Commission concludes it is appropriate for the Commission to consider prior sanctions or prior course of conduct.

### Discussion of Conclusions

The past history of alleged violations should be considered in determining the sanctions recommended by the Commission for imposition by the Supreme Court. The Commission considered prior disciplinary sanctions against Respondent in accordance with Rule 53(c) and Rule 54(k)4, Rules of the Arizona Supreme Court.

## III. DISCUSSION OF DECISION

In making the recommendation for discipline, the Commission has considered the goals of disciplinary action of protection of the public and deterrence of other lawyers from committing improper acts. The Commission also reviewed prior disciplinary actions and punishment administered in order to achieve a sense of proportion.

The Commission considered Respondent's health problems during the time period involved in these charges, although it is noted that Respondent presented no direct evidence of his health problems other than his own uncontroverted testimony. Also considered were aggravating factors present in this case, including Respondent's record of two prior formal disciplinary actions resulting in sanctions, a third disciplinary action imposing probation, which Respondent violated, and his failure to completely cooperate with the State Bar's investigation during the probationary period.

Based on all factors considered the Commission concluded that suspension is the appropriate sanction under the American Bar Association's *Standards For Imposing Lawyer Sanctions*.

Even though Respondent has been previously sanctioned, including probation with which Respondent failed to comply, the Commission did not believe that Respondent's failure to comply rises to the level of a disbarment sanction as set forth in Standard 8.1. While there may be injury or potential injury to the legal system or the profession, there was no injury to a client or the public. The Committee believed that the violation more appropriately should result in the sanction of suspension.

Likewise, Standard 8.2 recommends suspension when there have been prior acts of misconduct and a lawyer engages in further acts of misconduct that cause injury or potential injury to a client or the public. While Respondent's previous misconduct did not involve exactly the same misconduct as that in the Gilmour matter, there have been four separate findings of misconduct involving clients, including Gilmour, which should result in a sanction as serious as suspension.

Were the Gilmour matter the only charge, the sanctions of reprimand or censure in Standards 4.4 and 4.5 would probably be appropriate. In light of the previous discipline and failure to comply with probation, however, six members of the Commission concluded that suspension for one year was the appropriate sanction. Commissioner Crum dissented and believed a six-month suspension was appropriate for the reasons set forth herein.

The Commission further believes that when Respondent resumes practice a practice monitor should be a condition imposed upon his reinstatement.

RESPECTFULLY SUBMITTED this 19th day of October, 1991.

/s/ Raymond W. Brown
Raymond W. Brown
Vice–Chairman